The next case on the docket is 5-13-266 and read the marriage of I don't want to put you to that one akb and I don't want to put you to that one akb and I Yes, I'll go get my book Council may proceed The appellant Jill Hubert the petitioner and the appellant Salim Akhani. This case is an appeal of two orders entered in the St. Clair County Circuit Court by the former judge Michael Cook, the first being on January 15th of 2009 and the second being on August 25th of 2010. This case was originally filed as a petition for dissolution of marriage, filed by my client Salim Akhani, I'm going to refer to him as Sal for simplicity purposes without any disrespect, in July of 2009. Parties began the litigation, discovery started and at some point the respondent was the appellate herein Donna Robbins, who was formerly Donna Akhani, again well referred to as Donna, without making any disrespect, presented a document that she was seeking to enforce called the Separation and Divorce Agreement from April of 2008. Her attorney filed a motion for declaratory judgment asking for that agreement to be enforced. We then in turn filed a motion asking for it to be declared invalid and argument and testimony was taken on that in January of 2009. After hearing that argument and testimony, Judge Cook found the 2008 agreement to be valid and enforceable. The litigation continued and in May of 2010, the parties agreed to go to mediation. This was voluntary, it was not court ordered. The former retired judge James Radcliffe did the mediation with the parties and they signed an agreement. Then we prepared settlement documents consistent with that agreement and forwarded them to Donna's attorney for execution and they were never executed. What about the disclaimers in that, what Judge Radcliffe presided over, I'm, you know, looking at the language, probably had a hand in preparing, which indicated that he's not a counselor to either parties, not exercising adjudicatory powers and basically saying subject to being reviewed by the party's counsel if they wish to have it reviewed. Why wouldn't that be a condition proceeding? Well, I think that there are, the cases that talk about a condition precedent are very distinctive actually in this case. First of all, this was not court ordered mediation and I think that's very important here. This was voluntary mediation. Why would that make a difference? Because the parties weren't forced to go. They chose to participate in the mediation. Right. No, I realize that and there's no dispute in the record that it was voluntary mediation but why would compelled versus voluntary mediation make a difference? I mean, the procedures are going to be the same mediation as mediation, isn't it? Well, not necessarily. It's my position that the local rules that are cited by the respondent with regard to mediation are very specific in how the whole process takes place but that applies to court ordered mediation. Well, let me ask you a question about that anyway. Doesn't the 20th Judicial Circuit have separate mediation rules for domestic relations cases? They do. And what's been cited in the briefs, it's not that rule. It's the one generally for civil cases. And I can address that. The distinction is that pursuant to the Supreme Court rule and then subsequently the St. Clark County local rules, mediation is court ordered and required in custody and visitation cases. The parties in this case did not have children together and so this was not court ordered mediation under custody or visitation dispute. Therefore, it's my position that it doesn't fall under those rules either. It's sort of its own thing. This was the parties coming together and saying we would like to participate in mediation in good faith. So I think that does make it a little bit different than when the parties are mandated because it's just a mindset of going in. If you're forced to be there, I'm a mediator. I do a lot of custody mediation and I see parties that don't want to be there. These were not two parties that didn't want to be there. These were parties who wanted to do the mediation. When you get to these Judge Ratcliffe's disclaimers, if you will, correct, he wasn't a counsel for the parties but both parties had attorneys. There's discussion in Donna's brief about them being deprived the right of counsel, attorneys not being there. I don't know of anything in the record that says the attorneys weren't allowed to be there. The attorneys could have participated if Mrs. Afani wanted her attorney present. The document that signed, mediation agreement, it talks in there specifically that either party can cancel the mediation at any time. That didn't happen. They were there for eight hours. Nobody left. Nobody said, hey, I need to go talk to my lawyer. They signed the document. They sat in the parliament and talked about it afterwards. Well, they didn't have to say, I want to talk to my lawyer because they wrote right into the agreement that this agreement is subject to revision or to review and consultation by the lawyers. So, I mean, if we're going to have represented parties go negotiate without the benefit of their lawyers and we put in the agreement that the agreement is subject to review and part of it binding? Well, here's the problem that I have with that, Your Honor, is that if you basically give people just any kind of opt-out, if we put the word attorney in there in the mediation agreement, why would anybody ever go to mediation? I'm not suggesting for a minute that either one of these parties did not participate in mediation in good faith, that Judge Radcliffe didn't do everything he was supposed to do as a mediator, or that Mrs. Afani's attorney had any ill motives. However, we see it all the time. If you're going to say, let's send parties to mediation, oh, if they want to get out of it, all they have to do is say, hmm, I just don't want to do it anymore. I think it has to be more, I think that's what I would like to see happen. I'd like some guidance for mediators and for parties participating in mediation. Because why would you ever go to mediation then if you know that somebody could just do that to drag up the cost of litigation, to drag out the time involved in the case? The cases that talk about these provisions, that really consider them to be a condition precedent to an agreement, are very specific. The Groschenk case is one that has been cited by the respondent. In that case, the language is so specific as to what the parties had to do. It gave them a specific amount of time. You have five days. And after that, you have to put it in writing if you're agreeing or not agreeing. All of the cases that have been cited and that we found are very specific. It specifically says approval. This one doesn't say approval. It says review and consultation. And what that generally means when I am the recipient of a mediation agreement in custody cases or when I am the mediator, it's not that the attorney can go in and say, oh, no, no, no, you're not going to sign that. No, no, no. It means, hey, you know what? That needs to be tweaked a little bit. That's not, you know, we need to maybe extend the amount of time to complete that. Well, if something doesn't need to be tweaked, do you have a complete agreement? I think you do if you have the fundamental and the essential elements there, which I think are here in this particular case. I think the problem is that when you're going to just allow somebody the ability to, number one, have an attorney just say, no, you shouldn't sign that. After a party who's very knowledgeable, very successful, intelligent businesswoman sits in an eight-hour mediation and signs an agreement and then walks out and says, hmm, I just changed my mind. I'm not saying that that's not something that couldn't be allowed, but I think the document has to be more specific. And what I think where this case is important and where this case has some precedential value is for guidance from this court as to what a mediation agreement should say if it is intended that the parties are going to be able to change their minds. Let me ask a question that follows up on that. We always have to look at the consequences of whatever we decide. If we follow your line of reasoning, don't we come to a decision that basically discourages the ratification, consultation, or involvement of counsel after two parties have tried mediation and basically complicate their lives because even the best and most informed of laypersons, when they get into the legal morass and emotional swamp of a divorce, really rarely know exactly what the consequences of their actions or inactions are or what the consequences are of what they've agreed to. Aren't we setting a pretty bad precedent to say we can have language talking about a counsel reviewing it, but it doesn't matter, you signed it, you're in? Well, I disagree. I think it's the opposite. The precedent would be bad if it's the opposite to say regardless if you signed it, you can get out. What I'm saying is that I think in this particular example, with these specific facts, two very educated people who had been involved in this litigation for over a year who were knowledgeable at the time they originally separated so much so that they had issues with, but that these are two people who then went into this knowledge with full knowledge, they signed this agreement, and the language that was put into this particular settlement agreement, the word agreements used throughout, says subject to review and consultation. It doesn't say review and approval, it doesn't say review and rejection, and that's my point. I'm not suggesting, Your Honor, for a moment that we should say that once parties do mediation it's always binding. I think that does set a bad precedent. I think it totally discourages mediation and would probably result in parties very rarely doing mediation. But I think that what it needs to be is that parties need to understand that when they sign a mediation agreement, exactly what they're signing off on, what they're agreeing to, and going forward, what their rights are. And I think that in this particular case, I believe that these parties, at the time they signed it, understood that. That they were signing it, that they were done, that this ended the case. If Your Honors would reverse Judge Cook's August 25, 2010 ruling, this case would be done. Instead, we had to have four days of trial just to sort through all the confusion that resulted from these alleged agreements these parties entered. If this would have been signed, they were basically done. And so I think it would simplify litigation going forward. One thing's for sure. If we held the way you want us to, no attorney would ever send his or her client to mediation without his or her presence again. So what we'd have here is both of the clients would have had to pay eight hours of attorney's fees, et cetera, et cetera, et cetera. Because you're saying we're not going to let the attorneys consult with them before they make a final decision about binding themselves. I'm not suggesting that, Your Honor. I'm suggesting that if that is what the intention, if that's what the parties wish, the parties wish for their attorneys to have that right, that is how the agreement needs to read. The agreement needs to say specifically, when I do mediation as a custody mediator and my mediation clients tell me, we would like our attorneys to review this, I say review and approval by the attorneys. And if approved by the attorneys to be incorporated into a court order. I'm very specific about it. This one is not specific. And I submit that's because these parties were very set in what they were doing. They understood that, yes, this is a four-page document that doesn't get into, you know, some of the little details that a marital settlement agreement would get into. I mean, there's no marital settlement agreement that's four pages long. It's going to be a lengthy document. What it means, review and consultation, is, you know, we need to make sure that this particular mortgage, for example, when he's taking it over, we specify a timeline as to when he's going to take that over. And what if he can't agree on those details? If there are all these details still to be put in there, then do you really have an agreement? Well, but I think then that goes back to the 2008 agreement that Judge Cook enforced in January of 2009. That had all kinds of holes. That had all kinds of problems. We had, like I said, we had two, well, let's see here, we started in July of 2008, the final judgment wasn't entered until June of 2012. So we had four years of litigation where there was supposedly a marital settlement agreement that supposedly... But in that case, the judge then determined what those details are. And filled in the holes, based on evidence, right? But a judge could still do that. I mean, if the parties, let's say, for example, this document was drafted and there were loopholes, there were questions, a judge could still determine it. But what's more important is Judge Cook's finding in August of 2010 wasn't that this was unenforceable for lack of detail, or there was a mistake. In fact, he said specifically that that attorney client, or that attorney quote, review provision was a condition present. That's what he said. He didn't say she signed it for us. He didn't say she didn't understand what she was signing. He didn't say that it didn't provide enough detail. That wasn't the basis. And my submission and my request is that in this particular instance, because of the way the language was written, that this, that Judge Cook's ruling in August of 2010 be reversed and that this particular mediation agreement be enforced. I'm asking also that the Court provide some guidance for future, as mediators, as to this is what we're looking for. This would be the type of language that would operate as a condition precedent. This type of language doesn't. Because as a mediator, I see parties come in and tell me this is absolutely what we want. In fact, can you draw up the documents? I'm limited as a mediator as to what I can draft. But there's a difference between parties who have some reluctance. And I think Judge Radcliffe has not only had a lot of experience as a judge, but as a mediator, and I think he knows the difference. And I'm not sure this is the language he uses in every mediation agreement. I submit to you that it probably isn't. There's a lot of different languages. You can see from the cases that we cited as well as the cases that respondents cited, there's a lot of different ways you can put in the language, if in fact what you intend is to give the attorneys the ability to reject, which is a timeline. Reject in writing. Don't do something. There's none of that here. And it doesn't even use the word approve or reject. And I think that's where we have a problem. For those reasons, as well as the reasons stated in our brief, we would ask the court to consider reversing either the original well, we would ask the court to consider a couple of different options. Reversing the January 2009 ruling by Judge Cook, finding that the April 2008 agreement was enforceable. If that's the case, then I think the mediation agreement becomes somewhat difficult because it's sort of tied into the April of 2008 agreement, and we would ask for the case to be remanded under those conditions. If in fact the court is inclined to uphold Judge Cook's ruling of January 2009, then we would ask the court to reverse Judge Cook's ruling of April, I'm sorry, August 2010 and find that the mediation agreement is enforceable. And in that case, it would be with instructions from Mrs. Ms. Robbins, formerly Akbani. I'm sorry, I couldn't hear the last part of what you just said. With instructions that she complete and sign that an order be entered memorializing the terms of that mediation agreement. Thank you. Next. Kelly. May it please the court. With respect to the discussions of mediation in 2010, I'll address that first. One of the issues that the court brought up and one of the issues that Ms. Lox brought up was the mediation of custody and visitation issues in family court as opposed to the mediation of civil cases. There's different purposes for the custody and visitation. And yes, there is a completely different set of rules associated with that. The purpose for the custody and visitation is to keep the children out of the case. That's a different, and that's to get the parties into the room so they can come to an agreement on all custody and visitation issues so that the children don't have to be involved in the case by testifying, in-camera interviews, talking to the GAO, whatever. But in a civil case, and that's what this pretty much was because it was just financial issues. There was no custody or visitation issues between the parties. But in a civil case, we have the annex to the mediation for regular civil cases, the court-annexed mediation that I cited in my brief and quoted it at great length. And you'll see it goes through there in great detail and talks about the need for attorney involvement. And I cited a number of places within the court-annexed mediation for purposes of showing that attorney involvement is mandatory before you can come to an agreement. And some of the language that I quoted in my brief had to do with not only does the parties have to sign the agreement afterwards, but also their counsel has to sign the agreement afterwards. Not only does the agreement have to be concluded at the time of the mediation, but then the attorneys take that and draft up the agreement after the fact. None of that happened in this particular case. There was no attorney involvement whatsoever. Neither party talked to their attorney, neither party had the attorney drafted up, neither party consulted with their attorney before they signed the document that was put together by former Judge Radcliffe as the mediator. And the language in the local rules is not may, the language is shall. It specifically states in paragraph M that if an agreement is reached in whole or in part, it shall be reduced to writing on the memorandum of agreement form or attached thereto, and signed by the parties and their counsel, if any, at the conclusion of the mediation. And then the rest of the language again refers to contact with their attorney during the course of the mediation. And that is why there's a distinct difference between mediation when you're talking about property and debt, which is what we're talking about here, civil cases, as opposed to mediation for custody and visitation. And the, in this particular case, all that was left to divide was property and debt. That was not included in the previous order that had been found by Judge Cook. The initial order after a hearing in January of 2009, Judge Cook came back with a finding that the first separation and divorce agreement that the parties drafted up themselves before they signed the binding contract on the parties. This is similar to a situation where you have two pro se who come up with their own agreement ahead of time and then ask that an attorney flesh out the details or enter it in an agreed judgment of dissolution. There was no agreement on the remaining issues is really what it boiled down to. And the parties knew that. They knew that they had a binding agreement because Judge Cook had already said it's a binding agreement in January of 2009, a full year and a half before they even went to mediation. So they knew that. Everything about the mediation process was informal. It was myself and Ms. Lux getting on the telephone and saying let's send them over to mediation and see what happens. There was no order associated with sending them to mediation and that's critical in this case because if they're going to show, if they're going to ask this court to say that the mediation resulted in a binding agreement, then they have to produce something to demonstrate what the intent of the parties was outside of what Judge Cook concluded it was and that is that these parties did not have the intent to form an agreement at the time they entered into it and that the terms of the mediation constituted a conditioned precedent. Now what do I mean by intent to form an agreement? What do we, with respect to this particular case, why wouldn't the normal rules of mediation apply? Unlike Ms. Lux, I disagree. I think that it doesn't make a hill of beans difference whether this was ordered by a judge or whether it was done by agreement. I think the rules, the normal rules of mediation should apply and why wouldn't they? What would be the purpose of not applying the normal rules of mediation? And the normal rules of mediation say attorney involvement, ability to consult with an attorney, attorneys type it up afterward. And just because there was no court order doesn't mean none of the rules apply. It doesn't mean both parties waive their right to counsel. It doesn't mean, and nowhere in that agreement, in that memorandum in the mediation paperwork do you see in there that the parties waive their right to counsel and they choose to proceed immediately to an agreement. No, in fact it says the opposite. And let's talk about that for just a moment. The very last paragraph specifically states that this agreement is subject to review and consultation with respective attorneys. There's a couple of case law that talk about the subject to provision. Assuming they did come to an agreement, which I don't agree that they did, but assuming that they did, it was conditioned precedent upon their speaking to their attorneys. The first case that talks about that is a case called Interway v. Allegna, which I cited in my brief. And it specifically states in that case that subject to may have more than one meaning depending upon the circumstances of its use. However, used in connection with contracts, these words usually indicate a condition on a party's duty of performance and suggests that mere negotiation is contemplated by the parties. This is one more reason why this was negotiations and not a contract. Why the informality of it, the lack of detail of it, the fact that there was a subject to provision in there indicate, all indicate, that it was negotiations and not a contract. That when they walked out of there, they had said, okay, this is what we put together as negotiations so that we can take it back to our attorneys and review it with them and make an intelligent decision about what to do and have it drafted up and put into a formal judgment of dissolution. But that didn't happen. None of that happened. And one of the things that Ms. Locks was asked a moment ago is the lack of details. There are a ton of details that are missing out of this document with seven clauses and coming out of the mediation. And I cited all of them in my brief. I believe I had about 12 or 13 specific things that were missing from the paperwork in order to form an agreement. And one more indication that it was negotiations and not an agreement. With respect to whether an agreement is formed, the proponent of the agreement has to show by clear and convincing evidence that in fact there was an agreement that was made. There's case B, Charlton v. Chauvin, which I cited in my brief, which specifically states that a spouse who seeks to enforce an alleged property settlement agreement has the burden of establishing the existence of the agreement by clear and convincing evidence. I don't think that was done in this case with respect to the negotiations that came out of mediation. In fact, I don't think Judge Cook did not believe that clear and convincing evidence had been proven that there was in fact a contract that existed between the two parties when they came out of mediation. There was no request, there was no issue brought up with respect to not being allowed to put on testimony with respect to what happened at the mediation, and that issue was not briefed in this particular case. So what we're left with is no order sending them to mediation and trying to figure out what the intent of the mediation was. And at the time they walk into that mediation in front of Judge Radcliffe. And what you're left with with respect to all of that is what we don't have. We don't have an order, we don't have details, we don't have any evidence of what the parties' intents were. All we have is informalities, we have a lack of details coming out of it, we have no waiver of right to counsel, and we have the fact that both parties knew they were represented, as well as the mediator knew that they were represented by counsel. Why wouldn't Donna expect that anything she's going to enter into, anything that's going to be signed, is not going to be in agreement? There's going to be negotiations that she could come back to me with, that we could sit down and talk about. How is an attorney supposed to  to do in mediation if anything that results from it could potentially become a binding contract? Particularly when you have local rules which say it's not a binding contract until it's brought back to the attorneys and drafted up and signed by the attorneys and their parties. And that's what we're left with in this particular case. If, and in one case in particular, draws this issue out in very clear detail, it's Olympic Restaurant v. Bank of Wheaton, I put it in the brief, and it says the purpose of such an attorney approval clause is to provide the usually this comes up in the context of contracts of Company A buying widgets from Company B, but in this particular case it happens to involve divorce parties and dividing up property and debt. But it's still, contract rules still apply. The purpose of such an attorney approval clause is to provide the purchaser or seller with the opportunity of obtaining legal advice with respect to the transaction and its value lies in the fact that the contract may be canceled upon receiving such advice. And that's the key in this particular case. What is the purpose of having an attorney review clause if it's going to be subject to if you can't do anything with it? If all you're going to do is put in a couple of paragraphs of boilerplate language and call it a day, then that attorney review clause is worthless. And that's what they're asking you to do. That's what they're asking you to say, is that not just that an attorney review clause is worthless, but that parties can go in and end up coming out of mediation with agreements when they haven't even had a chance to talk to their attorney that they have hired for purposes of advising them throughout the entire case. They haven't even had a chance to talk to their attorneys about. And I think that that position is just not tenable. Are you is it your position excuse me, is it your position that the local rules as far as mediation are binding in this particular situation, or that they're guidance as to how it's supposed to be done in a non-custodial non-custody basically property argument? It's my position that they're binding. The local rules that I cited in my brief are binding. The annex to civil cases local rules specifically are binding. There's a whole other set for custody and visitation. Right. And like I said, I think that's for a sole, completely different purpose and completely different. But yes, they are binding. I cited a case of Moy v. NG which says local rules are binding on the parties and the court. And the language in the local rules is very clear that it does say shall with respect to attorney involvement, with respect to the attorneys typing it up. And it even talks to what the interplay should be between the attorneys and the mediator. Normally, I expect in civil cases, although I only do family, but normally I expect in contract cases, you might have the attorneys going in there with their with their parties. And in fact, the local rules even talk about that. But we didn't have that in this particular case. We didn't have it much of anything. It was very informal as I indicated. And there was no order saying that the attorneys were entitled to be there. There was no order saying that the attorneys weren't. But the agreement was we'd send the parties over and it was a phone conversation between me and Ms. Lox, that's it. So, with respect to yes, to answer your question, I do believe it's binding on the parties. And I think Moy supports that contention. I also wanted to speak briefly about the initial order that Judge Cook found to be valid, and that is the separation of divorce agreement. I cited a number of facts in there to indicate the husband is the one who typed up the agreement. The husband is the one who said, I want you to sign the agreement. The husband signed first. And then he hands it off to the wife. And now he's claiming to this court that he was under duress. I think his argument is a stretch at best with respect to any ability, any duress that he might have been under. He cites a case in particular in which a woman lost her relative, a close relative to death shortly before she entered into negotiations. That is completely different from these type of circumstances. While that constitutes duress in that case, duress of a normal divorce, and I cite in the case Richardson v. Richardson, duress stemming from the normal divorce process is not the type of duress that results in setting aside an agreement made between the parties. And the distinction between the first separation of divorce agreement and the results achieved in mediation are stark. First of all, the parties weren't even represented by counsel. Secondly, they came up with this agreement on their own and tried to work out everything on their own. And the IMDMA supports that. It tries to encourage people to work out their agreements on their own. But by the same token, once they hire attorneys, and once they have them advising them in a particular case, I don't think you can just get a second one, in the first instance they hadn't even talked about, nobody had filed, nobody had hired an attorney, they simply worked this out on their own, and it was all in this idea. Thank you. If the intention of Ms. Akbani was to hang her hat on and opt out, that if her attorney wasn't present at mediation, she didn't have to go through with it. I question her good faith in even going to mediation. Why didn't she insist on her attorney being present then? If she was looking at the local rules and thought they applied to this case, what's the point? To hang out with her soon-to-be ex-husband for eight hours and spend a couple thousand dollars? It makes no sense. It totally, totally undermines the purposes of mediation. There's a distinction. I definitely draw the distinction between court-ordered mediation, which is the mediation to which the local rules apply, and voluntary mediation. That has to operate under some type of requirement on the parties that they're going to be bound. And in this particular case, it is so factually distinctive from the cases that are cited. The cases that they've cited, the Olympic Restaurant, the Shulman case doesn't even really talk about attorney review provision. Olympic Restaurant, Procheck, all of them talk about very specific procedures. In this case, it's different. And I submit to you there's a reason it's different, and it's because of the sophistication of the parties, the fact that they were very knowledgeable of their business, the fact that they had done a prior agreement that had already been imposed upon them. They knew what they were getting into. Judge Radcliffe knew that, and that's why this language was used. And I think that a mediator has that flexibility and should have that flexibility with guidance from this court or another as to when exactly a party's allowed to opt out of a mediation. Well, this would be a totally different case if they hadn't written right into the agreement that it was subject to review and consultation with their attorneys. I agree. I mean, that's what Judge Cook found was it was a condition preceding to the binding agreement. I agree that that's true. I also agree that it would have been a different case, and it would have been a condition, President, had it said approval, rejection. Well, I understand you differ with the wording. And I think that there is a distinction to be made. I think that this operated more as a there were still some negotiations to be had, but these terms were locked in. And I think that when you look at the circumstances of this case, the length of the litigation, the knowledge of the parties, it is difficult to understand, and we're talking about the intent of the parties going into mediation. If all they were intending to do was to go in there and sit and talk about things for eight hours, that just doesn't add up given the history, given the fact that Mr. Gruninger admits this was something that we agreed to, the parties going to mediation. Had there been some request for the attorneys to be present, the attorneys could have been present. And I find it a difficult proposition to suggest that going into mediation without your attorneys present somehow just gives you the ability to just veto if you change your mind. And I think that undermines the mediation process. And I think that with some guidance from this Court going forward that parties can know what they're getting into and know that specifically what somebody has to do to opt out of it, or in a case like this, when it just means we want the attorneys to have the opportunity to work with their clients. Thank you. Counsel, in case you would have taken that advice, would you be notified in due course? The Court will take a short recess.